*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* CARROLL, Minors.

UNPUBLISHED
July 16, 2026
2:28 PM

No. 378090
Wayne Circuit Court
Family Division
LC No. 2020-000402-NA

Before: GADOLA, C.J., and BOONSTRA and CAMERON, JJ.

PER CURIAM.

Respondent[1] appeals by right an order removing the minor children KC, SC, and TC from his care and custody. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In July 2025, law enforcement arrived at respondent's home after KC reported that he had been locked in his bedroom and had to break down his door to use the bathroom. KC explained to the police that for several years, his father would lock him in his bedroom at night or whenever he misbehaved. While locked in his room, he was forced to urinate and defecate in a jug. KC went to a hospital for a medical evaluation, which revealed no physical signs of abuse.

As a result of that incident, Children's Protective Services (CPS) launched an investigation and conducted a home assessment. They discovered that KC's bedroom door "was hanging off the hinges and had to be unscrewed with a drill." Inside the bedroom were some books, clothing, and a dirty mattress on the floor with no sheets. Respondent admitted to a CPS worker that he locked KC in the bedroom by nailing in the door at night and when KC misbehaved, allegedly to protect KC and the rest of the family from KC's extreme behavioral challenges. The CPS workers

---

[1] Respondent is the children's legal father. Their legal mother was also named as a respondent in the removal proceedings, but she has not appealed the order removing the children from her care.

were unable to interview KC's younger sisters, SC and TC, because they are both nonverbal—SC has autism, and TC has cerebral palsy.

The Department of Health and Human Services (DHHS) filed a petition for the children to be removed from respondent's care. After hearing testimony at the preliminary hearing, the trial court found that remaining in the home was contrary to the children's welfare and that the DHHS had made reasonable efforts to prevent removal. It entered an order removing all three children from respondent's care, and this appeal followed.

## II. REMOVAL

Respondent argues that the trial court clearly erred by removing KC, SC, and TC from his care and custody following a removal hearing.[2] We disagree.

## A. WAIVER, PRESERVATION AND STANDARD OF REVIEW

Respondent waived the issue whether the trial court clearly erred by removing KC from his care and custody. "[W]aiver is the intentional relinquishment of a known right" and "may be shown by express declarations or by declarations that manifest the parties' intent and purpose." *Sweebe v Sweebe*, 474 Mich 151, 156-157; 712 NW2d 708 (2006) (quotation marks and citation omitted). During closing arguments, respondent conceded that removal of KC was proper by noting, "we don't have an objection to removal of [KC], but the other two, there's no basis for [removal]." Respondent deemed removal of KC proper at the removal hearing, so he is not entitled to relief on this basis because "[r]espondent may not assign as error on appeal something that [he] deemed proper in the lower court because allowing [him] to do so would permit respondent to harbor error as an appellate parachute." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). Therefore, the issue whether the trial court clearly erred by removing KC from respondent's care and custody has been waived.

Regarding the trial court's decision to remove SC and TC from respondent's care, we review its factual findings for clear error. *In re Leach*, 347 Mich App 26, 30; 14 NW3d 178 (2023). "Clear error exists when we are left with a definite and firm conviction that a mistake has been made. The trial court's application of its findings of fact to a statute presents a question of law

---

[2] Although it is clear from context that respondent appeals the trial court's decision to remove the children from his care at the preliminary hearing, respondent argues in his brief that the trial court erred by exercising jurisdiction over the children when the criteria for jurisdiction under MCL 712A.2(b) were not satisfied. But the trial court never authorized the petition or purported to exercise jurisdiction over the children; it adjourned any proceedings related to jurisdiction to allow the DHHS to send notice to the Blackfoot tribes. Even if the preliminary hearing is adjourned, a trial court may still order the children to be placed outside the respondent's home "when necessary to assure the immediate safety of the child, pending the completion of the preliminary hearing and subject to [MCR 3.965(C)] . . . ." MCR 3.965(B)(11). Despite respondent's reliance on authority regarding the exercise of jurisdiction, this appeal concerns only the children's pretrial placement, not the trial court's jurisdiction.

that we review de novo," meaning that "we review the issue independently, with no required deference to the lower court." *Id*. (citation omitted).

## B. ANALYSIS

At the preliminary hearing, "the court must determine if the petition should be authorized and, if so, whether the child should remain in the home, be returned home, or be placed in foster care pending trial." *In re Benavides*, 334 Mich App 162, 170; 964 NW2d 108 (2020) (quotation marks and citation omitted). The trial court may order the pretrial placement of a child only if certain criteria are satisfied:

(2) *Criteria*. The court may order placement of the child into foster care if the court finds all of the following:

(a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.

(b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from the risk as described in subrule (a).

(c) Continuing the child's residence in the home is contrary to the child's welfare.

(d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.

(e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare. [MCR 3.965(C)(2).]

See also MCL 712A.13a(9). "If the trial court orders placement of the child in foster care, it must make (1) an explicit finding that placement in the child's home is contrary to the child's welfare and (2) the reasonable efforts findings . . . ." *In re McCarrick/Lamoreaux*, 307 Mich App 436, 449; 861 NW2d 303 (2014). See also MCR 3.965(3) and (4). "The preponderance of the evidence standard applies to cases where the court is merely assuming jurisdiction over the child and not terminating the parent's rights in that child." *In re Williams*, 333 Mich App 172, 183; 958 NW2d 629 (2020) (quotation marks and citation omitted).

The trial court did not err by removing SC and TC from respondent's care and custody on the basis of the doctrine of anticipatory neglect. "[T]he doctrine of anticipatory neglect allows an inference that a parent's treatment of one child is probative of how that parent may treat other children." *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020). The trial court did not err when it applied the doctrine of anticipatory neglect to find that remaining in the home was contrary to SC's and TC's welfare. Respondent locked KC inside his bedroom by nailing the door shut, depriving him of personal freedom, food, water, and access to a bathroom. Respondent's treatment toward KC is probative of whether respondent presents a substantial risk of harm to his younger siblings. SC and TC are nonverbal and have special needs. These challenges may prevent them from seeking help or from informing the DHHS about the care that they receive. This poses

-3-

a substantial risk of harm to their well-being because respondent demonstrated an inability to safeguard KC's well-being by locking him in a room in response to his behavioral issues. It naturally follows that if respondent struggled to manage SC's or TC's behavior, then he may also subject them to similar harmful conditions. Under these circumstances, SC and TC were at a substantial risk of harm, and staying in the home was contrary to their welfare. See MCR 3.965(C)(2)(a) and (c); MCR 3.965(3).

Additionally, placement in foster care was adequate to protect the well-being of SC and TC. See MCR 3.965(C)(2)(c) and (e). Before the preliminary hearing, KC was placed with his maternal grandmother pursuant to the safety plan that respondent and the DHHS developed. A DHHS worker testified that KC was doing well in this placement and that the grandmother was willing to take placement of SC and TC. If that arrangement was not feasible, then the children would be placed in a foster care home. There was no indication that the grandmother or a foster home could not provide the court-ordered support services for SC's and TC's special needs.

Furthermore, no provision of service or other arrangement except removal was reasonably available to protect the children. See MCR 3.965(C)(2)(b). The DHHS worker testified that placing KC in his maternal grandmother's care was the only safety plan that could be achieved with respondent and that the grandmother had refused to comply with a home assessment until she received a court order for the children's removal.

The trial court also found that the DHHS made reasonable efforts to prevent removal, noting that the DHHS conducted a team decision meeting, implemented a safety plan, cooperated with law enforcement, had KC examined for physical abuse, and interviewed respondent and the children's mother. It also noted that respondent had completed a treatment plan in 2023 after the children were removed from his care in a previous CPS case. Under these circumstances, we are not left with "a definite and firm conviction" that the trial court made a mistake when it found that reasonable efforts were made. *In re Leach*, 347 Mich App at 30; MCR 3.965(2)(d); MCR 3.965(4).

Respondent also claims that the trial court relied on recanted testimony when it ordered removal because KC unexpectedly interrupted the removal hearing to denounce the allegations as false. Respondent attended the hearing from his home via Zoom. While the trial court was making its findings, KC entered respondent's room and stated, "None of this [sic] true." Respondent argues that KC's statement indicated that his earlier allegations made to law enforcement and medical examiners were "recanted and uncorroborated." But the brief interruption could not have disproved the testimony during the removal hearing. KC was not under oath when he made the statement, and it was unclear which allegations, if any, KC believed were false. After the interruption, the trial court acknowledged that KC may have recanted some of his earlier statements, but it properly disregarded his unsworn statement when making its decision.

-4-

The trial court did not clearly err when it made all the necessary findings to remove SC and TC from respondent's care, and it did not err when it entered the order for their removal after properly considering the sworn testimony taken at the removal hearing.

Affirmed.

/s/ Michael F. Gadola
/s/ Mark T. Boonstra
/s/ Thomas C. Cameron